UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANTHONY BOONE and TONYA BOONE,

             Plaintiffs,

- against –

JOSEPH J. THANE and
A.D. TRANSPORT EXPRESS, INC.

             Defendants.
------------------------------------------------------------x

**MEMORANDUM and ORDER**

07-CV-4358 (SLT)(VP)

**TOWNES, United States District Judge:**

In August 2007, plaintiffs Anthony and Tonya Boone commenced this negligence action in the Supreme Court of the State of New York, Kings County, seeking to recover for injuries they allegedly sustained when a car driven by Anthony Boone collided with a truck owned by defendant A.D. Transport Express, Inc., and operated by defendant Joseph J. Thane. The action was timely removed to this Court, *see Boone v. Thane*, No. 07-CV-4358 (SLT)(VVP), 2009 WL 910556 (E.D.N.Y. Mar. 31, 2009), where, by order dated July 29, 2010, this Court granted defendants' motion for summary judgment with respect to Tonya Boone. However, this Court denied defendants' motion for summary judgment with respect to Anthony Boone.

Anthony Boone (hereafter, "Plaintiff") now moves for summary judgment on liability. Defendants have not opposed that motion. Nonetheless, for the reasons set forth below, Plaintiff's motion is denied.

*Plaintiff's Motion for Summary Judgment*

According to Plaintiff's Statement of Material Facts pursuant to Local Civil Rule 56.1 ("Plaintiff's 56.1 Statement"), the undisputed facts in this case are as follows. On November 12, 2004, at approximately 12:09 p.m., Plaintiff was driving a 1987 BMW sedan northbound in the

right lane on the Throgs Neck Bridge (Plaintiff's 56.1 Statement at ¶¶ 1, 6). At the same time, defendant Thane, an independent contractor operating a 2001 Freightliner box truck pursuant to a lease agreement with defendant AD Transport Express, Inc., was driving the truck northbound in the center lane on the same bridge (*id.* at ¶¶ 3, 7). At some juncture, "Thane changed [the] direction of his vehicle and entered the right lane striking the BMW driven by [Plaintiff]" and "causing the BMW to spin out of control" (*id.* at ¶¶ 7, 8).

Plaintiff's 56.1 Statement itself alleges no other facts relating to the accident, but refers to two documents which describe the accident: an "Incident Report," allegedly authored by Thane "in response to plaintiff's First request for Production of Documents and Things," and a "Police Accident Report" (*id.* at ¶¶ 9-10). Plaintiff states that the "response" – presumably, Thane's Incident Report – "confirms the undisputed events of November 12, 2004 at the date[,] time and location of the subject motor vehicle accident" (*id.* at ¶ 9). With respect to the Police Accident Report, Plaintiff states that "[t]he police officer at the scene concluded that based on the statements of the witnesses as well as the physical evidence he **observed** at the scene the 'accident was caused by veh. #2 [*i.e.*, the truck] making an unsafe lane change'" (*id.* at ¶ 10) (emphasis in original)(bracketed material added).

These two documents are among the exhibits attached to the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memo"). The Incident Report, which is attached as Exhibit G to Plaintiff's Memo, contains a two-page form signed by Thane on November 15, 2004. On the first page of this form, Thane described the weather and road conditions at the time of the accident by checking boxes to indicate that November 12,

2004, was a rainy day; that the road surface was wet; and that traffic conditions were heavy. The second page of the form contains the following handwritten description of the accident:

> Traveling north on I 295 on Throgs Neck Bridge I was in center lane, I put on signal to move to R. Lane and hit BMW which was in my blind spot. BMW lost control and started spinning out in center lane, when doing so barely bumped black Toyota which was in far left lane.

The second page of the form also contains a crude drawing of the accident, in which the fronts of the BMW, the truck and the Toyota are aligned. Plaintiff's 56.1 Statement specifically notes that Thane confirmed at his deposition that he wrote the description of the accident and drew the diagram of the accident (*id.* at ¶ 12).

The Police Accident Report, which is attached as Exhibit F to Plaintiff's Memo, also contains an "accident description," comprised largely of statements allegedly made to a Sergeant Nickens by the drivers. According to this section of the report, Thane stated, "I was trying to move into the right lane when I struck [the BMW] because I didn't see him." Plaintiff allegedly told Nickens that he was "driving straight ahead in the right lane when I was hit by [the truck]." While the accident description concludes, "Based on witness statements personal observations, and physical evidence it appears the accident was caused by [the truck] making an unsafe lane change," Sergeant Nickens specifically noted at the start of the "accident description" that he "did not witness" the accident. Sgt. Nickens did not issue a ticket to Thane.

The first page of the Police Accident Report contains a drawing of the accident and "Vehicle Damage Codes," describing the precise manner in which the vehicles collided. These indicate that the right front bumper of the truck impacted the left rear quarter panel of the BMW. The BMW then spun out, striking the Toyota on its right side.

Although not obligated to do so, this Court has reviewed all the other exhibits submitted by Plaintiff in connection with the motion, including the transcripts of the depositions of Joseph Thane and Plaintiff. *See* Fed. R. Civ. P. 56(c)(3) ("The Court need consider only the cited materials, but it may consider other materials in the record."). The descriptions of the accident contained in these transcripts are essentially consistent with the descriptions set forth in the Incident Report and Police Accident Report. Thane testified that he was traveling in the center lane on the Throgs Neck – a toll bridge – when he saw signs informing him that drivers wishing to pay the toll in cash needed to be in the right lane (Deposition of Joseph Thane dated June 27, 2008 ["Thane Dep."], attached as Ex. D to Plaintiff's Memo, at 80-81). Before moving his truck to his right, Thane looked in the mirrors mounted on the right side of his cab: an 18 by 5 inch "normal" mirror and, mounted below that, a four by five inch "blind spot" mirror (*id.* at 85-86, 91). Although the blind spot mirror is "more magnified and picks up a larger area" than the normal mirror, Thane testified that there is still a blind spot alongside the passenger door of the truck where "you cannot see a little car like that sometimes" (*id.* at 86-88).

Seeing nothing in the mirror, Thane put on his directional signal in anticipation of moving to the right (*id.* at 83, 93). At the time of his deposition, Thane could not recall how long this signal was on before he moved the truck into the right lane (*id.* at 83). However, Thane never saw Plaintiff's car at any time before the accident (*id.* at 90).

Thane had moved only a "little portion" of his truck into the right lane when its right front bumper came into contact with Plaintiff's car (*id.* at 98). Thane did not hear any horns sound prior to impact (*id.* at 102). According to Thane, the truck struck Plaintiff's car on the driver's side "on the back side of the door, along the rear tire, somewhere in that area" (*id.*). Thane later

4

told the police that the car was in his blind spot, and that he did not see it (*id.* at 114). Thane was not given a ticket or told that he had committed any violations (*id.* at 118).

Plaintiff testified that he never saw the truck at all prior to the accident (Deposition of Anthony Boone dated June 27, 2008 ["Boone Dep."], attached as Ex. E to Plaintiff's Memo, at 151). Plaintiff claimed he looked in his rearview mirror "all the time," but never saw the truck or anything else in his rearview mirror at the time of the accident "because it was raining and the water [was] splashing back" (*id.* at 174-75). Plaintiff also did not observe any vehicles to his immediate left prior to the impact (*id.* at 172), but testified that his car was struck on the left quarter panel (*id.* at 151).

Based on these facts, Plaintiff now moves for partial summary judgment with respect to liability, advancing two arguments. First, although the parties agree that Thane's truck struck Plaintiff's vehicle on the side, Plaintiff argues that "[a] rear-end motor vehicle accident" creates a presumption of negligence, which defendants have not rebutted (Plaintiff's Memo at 9). Second, citing to cases in which the undisputed facts established a clear statutory violation, Plaintiff argues that he "had the right to pass in his lane" and that Thane's claim that he did not see the car only serves to further establish his negligence (Plaintiff's Memo at 12). Relying on these same cases, Plaintiff further argues that he was not contributorily negligent because he "was entitled to anticipate that defendant would obey the traffic laws" (*id.*). Defendant has not filed any opposition to Plaintiff's motion.

5

## DISCUSSION

### *Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e)(2); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the disputed facts must be material to the issue in the case, in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). "If the

6

evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotation marks omitted) (alteration in original).

"[E]ven where a non-moving party fails to respond to a motion for summary judgment, a court 'may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006) (quoting *Vermont Teddy Bear Co. V. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks and citations omitted from *Vermont Teddy Bear*; emphasis in *Vermont Teddy Bear*). Thus, "[e]ven unopposed motions for summary judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" *Id.*

### *New York Law Relating to Negligence Action*

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Gross v. Rell*, 585 F.3d 72, 80 (2d Cir. 2009). Throughout this litigation, both parties have assumed that New York law applies in this case, and this Court has previously held that New York substantive law governs. *Boone v. Thane*, No. 07-CV-4358 (SLT)(VVP), slip op. at 4 (E.D.N.Y. July 29, 2010).

New York courts have long been reluctant to grant summary judgment in negligence and other personal injury actions. Indeed, prior to 1959, New York law did not even permit summary judgment in negligence actions. *See* David A. Siegel, N.Y. Practice § 280 (4th ed. 2011). Under current New York law, "summary judgment is technically available in negligence cases, including automobile accidents." *DeRaffele v. Kennedy*, No. 04 Civ. 5797 CLB, 2005 WL 1023224, at *1 (S.D.N.Y. Apr. 15, 2005) (citing *Andre v. Pomeroy*, 35 N.Y.2d 361, 364 (1974)). However, while summary judgment is normally appropriate in cases in which the facts are uncontested, "this is not always so in negligence cases." *Andre*, 35 N.Y.2d at 364. As the New York Court of Appeals explained:

> [E]ven when the facts are conceded there is often a question as to whether the defendant or the plaintiff acted reasonably under the circumstances. This [question] can rarely be decided as a matter of law. Thus as a practical matter summary judgment continues to be a rare event in negligence cases.

*Id.* Indeed, the New York Court of Appeals has stated that "when the suit is founded on a claim of negligence, the plaintiff will generally be entitled to summary judgment only in cases in which there is no conflict at all in the evidence, the defendant's conduct fell far below any permissible standard of due care, and the plaintiff's conduct either was not really involved (such as with a passenger) or was clearly of exemplary prudence in the circumstances." *Ugarriza v Schmieder*, 46 N.Y.2d 471, 475-476 (1979) (quoting *Andre*, 35 N.Y.2d at 364-65 (parentheses in *Andre*; internal quotations and citation omitted). The Second Circuit has apparently adopted this standard in diversity cases in which negligence claims are governed by New York law. *See Moretto v. G & W Elec. Co.*, 20 F.3d 1214, 1221 (2d Cir. 1994) (citing *Andre* in holding that

"this is not one of those rare cases in which the evidence merits a finding of negligence as a matter of law.").

In an attempt to convince this Court that this is one of those rare negligence cases in which summary judgment should be granted, Plaintiff attempts to analogize his case to two lines of cases in which New York courts have regularly awarded summary judgment. The first line consists largely of cases in which the undisputed evidence establishes that the plaintiff was in a stopped vehicle which was rear-ended by the defendant. These cases hold that "[a] rear-end collision with a stopped automobile establishes a prima facie case of negligence on the part of the operator of the moving vehicle and imposes a duty on the operator of the moving vehicle to explain how the accident occurred." *Leal v. Wolff*, 224 A.D.2d 392, 393 (N.Y. App. Div., 2d Dep't 1996) (*citing Gambino v City of New York*, 205 A.D.2d 583 (N.Y. App. Div., 2d Dep't 1994) ; *Starace v Inner Circle Qonexions, Inc.*, 198 A.D.2d 493 (N.Y. App. Div., 2d Dep't 1993); *Edney v Metropolitan Suburban Bus Auth.*, 178 A.D.2d 398 (N.Y. App. Div., 2d Dep't 1991); *Benyarko v Avis Rent A Car Sys.*, 162 A.D.2d 572, 573 (N.Y. App. Div., 2d Dep't 1990)). The operator of the moving vehicle, who is in the best position to explain the cause of the collision, is then required to rebut this inference of negligence. *Id.* If the operator of the moving vehicle fails to do so, the plaintiff may properly be awarded judgment as a matter of law. *See id.*; *Starace*, 198 A.D.2d at 493; *Young v City of New York*, 113 A.D.2d 833, 834 (N.Y. App. Div., 2d Dep't 1985)).

Plaintiff's case, however, is readily distinguishable from this line of cases. First, Plaintiff's car was not "rear-ended," but was struck in on the left side, either "on the back side of the door, along the rear tire, somewhere in that area" (Thane Dep. at 102) or on the left quarter

panel (Boone Dep. at 151). Moreover, the parties agree that Plaintiff's automobile was not stopped, but was moving in the right lane at the time of impact. Accordingly, the first line of cases cited by Plaintiff are inapposite.

The second line of cases involve instances in which the undisputed facts establish a clear violation of a provision of New York's Vehicle and Traffic Law (the "VTL"). Many of the cases cited by Plaintiff involve instances in which the undisputed evidence establishes that one driver violated VTL § 1141 by making a left turn into the path of an oncoming vehicle which had the right of way. *See, e.g., Berner v. Koegel*, 31 A.D.3d 591 (N.Y. App. Div., 2d Dep't 2006) (plaintiff demonstrated that the defendant violated VTL § 1141 when she made a left turn directly into the path of the plaintiff's vehicle as the plaintiff's vehicle was legally proceeding into the intersection with the right-of-way); *Gabler v. Marly Bldg. Supply Corp.*, 27 A.D.3d 519, 520 (N.Y. App. Div., 2d Dept. 2006) (defendants demonstrated that the plaintiff violated VTL § 1141 when he made a left turn directly into the path of the defendants' vehicle as it legally proceeded with the right of way); *Maloney v. Niewender*, 27 A.D.3d 426, 426 (N.Y. App. Div., 2d Dep't 2006) (appellant demonstrated her entitlement to judgment as a matter of law by establishing that the codefendant Tova Beige violated VTL § 1141 when she made a left-hand turn directly into the path of the appellant's oncoming vehicle). Other cases cited by Plaintiff involve clear violations of other provisions of the VTL. *See, e.g., Bongiovi v. Hoffman*, 18 A.D.3d 686, 687 (N.Y. App. Div., 2d Dep't 2005) (plaintiff established that the defendant, whose vehicle was controlled by a stop sign, violated VTL § 1142(a) by proceeding into the intersection of in front of plaintiff's oncoming vehicle, which had the right of way); *Ferrara v. Castro*, 283 A.D.2d 392 (N.Y. App. Div., 2d Dep't 2001) (defendant driver exited a driveway and entered

into traffic without yielding in "plain violation" of VTL §§ 1143 and 1173); *Silberman v. Surrey Cadillac Limousine Service, Inc.*, 109 A.D.2d 833 (N.Y. App. Div., 2d Dept. 1985) (defendant driver violated VTL § 1129(a) by tailgating the car in front of defendants' limousine); *Stanisz v. Tsimis*, 96 A.D.2d 838 (N.Y. App. Div., 2d Dept. 1983) (defendant's admission that he failed to stop at a stop sign, thereby resulting in the accident, established a violation of VTL § 1172).

In all of these cases, however, the rationale is the same. It is well-established that an unexcused violation of a statute is negligence. *See, e.g., Martin v. Herzog*, 228 N.Y. 164, 168 (N.Y. 1915); *Arms v Halsey*, 43 A.D.3d 1419, 1419 (N.Y. App. Div., 4th Dep't 2007). Accordingly, a party can demonstrate "a prima facie entitlement to judgment as a matter of law" by establishing a violation of the VTL. *See, e.g., Berner*, 31 A.D.3d at 592; *Gabler*, 27 A.D.3d at 520; *Maloney*, 27 A.D.3d at 426. However, "only an *unexcused* violation of the Vehicle and Traffic Law . . . compels a finding of negligence, and . . . a violation may be excused if [the driver] exercised reasonable care in an effort to comply with the statute." *Arms*, 43 A.D.3d at 1419 (internal quotations and citations omitted); *Arricale v Leo*, 295 A.D.2d 920, 920 (N.Y. App. Div., 4th Dep't 2002) (citing cases).

In many of the cases cited by Plaintiff, the only excuse advanced for the statutory violation was that the violator failed to see the other car until it was too late. *See, e.g., Berner*, 31 A.D.3d at 592; *Gabler*, 27 A.D.3d at 520; *Maloney*, 27 A.D.3d at 426; *Bongiovi*, 18 A.D.3d at 687. However, since a driver has a common-law duty to see that which he should have seen through the proper use of his senses, the fact that the violator failed to see a car or person that should have been obvious does not excuse the violation. *See, e.g., Larsen v Spano*, 35 A.D.3d 820, 822 (N.Y. App. Div., 2d Dep't 2006); *Ferrara v Castro*, 283 A.D.2d 392, 393 (N.Y. App.

11

Div., 2d Dep't 2001). Indeed, as many of the cases cited by Plaintiff note, an admitted failure to see what was there to be seen creates an independent ground for liability. *See, e.g., Gabler*, 27 A.D.3d at 520; *Maloney*, 27 A.D.3d at 426. In addition, many of the cases cited by Plaintiff defuse comparative negligence claims by noting that the non-violator "was entitled to anticipate that the [violator] would obey the traffic laws which required him to yield to [non-violator's] vehicle." *Gabler*, 27 A.D.3d at 520 (citing *Bongiovi*, 18 A.D.3d 686); *Russo v. Scibetti*, 298 A.D.2d 514, 514 (N.Y. App. Div., 2d Dep't 2002) (citing *Cenovski v Lee*, 266 A.D.2d 424 (N.Y. App. Div., 2d Dep't 1999)); *Agin v. Rehfeldt*, 284 A.D.2d 352, 352-53 (N.Y. App. Div., 2d Dep't 2001); *Stiles v County of Dutchess*, 278 A.D.2d 304, 305 (N.Y. App. Div., 2d Dep't 2000).

Plaintiff attempts to analogize his case to this line of cases. However, the facts do not establish a clear violation of any provision of the VTL. Sgt. Nickens did not issue Thane a ticket or cite him for any traffic violations, and Plaintiff does not specify what provision of the VTL was clearly violated by Thane's conduct. At best, Plaintiff alludes to VTL § 1123 by stating that he "had a right to pass in his lane." Plaintiff's Memo at 12. However, VTL § 1123 – which sets forth the circumstances under which passing on the right is permitted – does not afford Plaintiff an unqualified right. Although that statute provides that "[t]he driver of a vehicle may overtake and pass upon the right of another vehicle . . . upon any roadway on which traffic is restricted to one direction of movement, where the roadway is free from obstructions and of sufficient width for two or more lines of moving vehicles," VTL § 1123(a)(3), it further states that "[t]he driver of a vehicle may overtake and pass another vehicle upon the right *only under conditions permitting such movement in safety.*" *Id.*, § 1123(b) (emphasis added). The undisputed facts do not establish that conditions permitted Plaintiff to pass on the right in safety. To the contrary, it is

undisputed that it was raining at the time of accident and that road conditions were wet, and Plaintiff himself testified that he was unable to see behind his car because of the conditions (Boone Dep. at 174-75).

Plaintiff also relies on this line of cases in arguing that Thane was negligent because he failed to see what was there to be seen. However, none of the cases cited by Plaintiff granted summary judgment solely on the basis that the non-movant admitted that he or she failed to see what was there to be seen. Moreover, in all of those cases, the undisputed facts established the accident took place in front of the driver found to be negligent. In this case, Thane testified that Plaintiff's car was in his blind spot, making it impossible to see. Thane Dep. at 86-88.

Finally, any suggestion that the police determined that the accident was caused by Thane making an "unsafe lane change" is inaccurate. Sgt. Nickens expressly noted in his Police Accident Report that he "did not witness" the accident. Moreover, he concluded only that "it *appear[ed]* the accident was caused by [the truck] making an unsafe lane change," not that he had determined that it was.

## *CONCLUSION*

For the reasons set forth above, Plaintiff's motion for partial summary judgment is denied. The parties are directed to send a letter requesting a pre-trial scheduling conference within thirty (30) days of the date of this Memorandum and Order. *See* Individual Motion Practices & Rules of Hon. Sandra L. Townes, § IV.

**SO ORDERED.**

s/ SLT

/SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2011
Brooklyn, New York

13